```
               UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF PENNSYLVANIA

DIANA M. MURPHY,              :      CIVIL NO. 3:05-1132
                              :
          Plaintiff           :
                              :
     v.                       :      (Judge Conaboy)
                              :
JO ANNE B. BARNHART,          :      (Magistrate Judge Smyser)
Commissioner of Social        :
Security,                     :
          Defendant           :
                              :
```

## REPORT AND RECOMMENDATION

The plaintiff has brought this action under the authority of 42 U.S.C.§ 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for disability insurance benefits.

### I.  Procedural Background

The plaintiff applied for disability insurance benefits (DIB) on February 28, 2003, alleging disability since June 11, 2002. Tr. 46-48. Her application was denied initially and she filed a request for a hearing. Tr. 35-40. On May 6, 2004, the plaintiff, her husband, and a vocational expert (VE) testified at an administrative hearing. Tr. 315-61. On June 21, 2004, the administrative law judge (ALJ) issued a decision denying the

plaintiff's claim. Tr. 12-24. The plaintiff requested review from the Appeals Council, who denied her request on April 8, 2005. Tr. 5-7. Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(g).

**II. Factual Background**

The plaintiff was fifty-three years old at the time of the ALJ's decision. Tr. 15. She had a high school education and past work experience as a cashier and as a disbursement processor for a financial services company. Tr. 67, 75, 321-23. The plaintiff alleged disability since June 11, 2002, due to major depression, anxiety, panic attacks, chronic chest pain, high blood pressure, and self-mutilation. Tr. 66.

The plaintiff was admitted to the hospital on June 11, 2002, with chest pain and palpitations. Tr. 115. She was diagnosed with atypical chest pain with palpitations after a stress test, CAT scan, and laboratory findings revealed normal findings, except for elevated cholesterol. Tr. 114, 116.

The plaintiff saw her family physician, Philip A. Boccagno, M.D. from February 2002 through March 2003, for reflux, high

blood pressure, and weight issues. Tr. 175-85. After the plaintiff's June 2002 visit to the emergency room, Dr. Boccagno opined that the plaintiff had classic panic attacks related to work stress. Tr. 183. He prescribed Paxil for long-term treatment. *Id.* In July 2002, the plaintiff did not have panic symptoms, chest pain or suicidal feelings. She thought that the Paxil was causing her memory problems and that it did not agree with her. Tr. 181. Dr. Boccagno recommended psychiatry. *Id.* In December 2002, Dr. Boccagno noted that the plaintiff's panic was "still out of control." Id. 176. Dr. Boccagno only suggested weight loss for her reflux and a diuretic for her blood pressure, and told the plaintiff to return in six weeks. Tr. 176.

In August 2002, Matthew Berger, M.D., a psychiatrist, began treating the plaintiff for depression and anxiety. Tr. 153-55. Throughout 2003, Dr. Berger conducted monthly mental status examinations, during which the plaintiff reported that she was depressed and anxious, often in relation to family problems. Tr. 144, 146, 148-52, 154, 156, 255-60, 262-63, 265, 268-69. The plaintiff's insight, judgment, orientation, and contact with reality were appropriate and intact. *Id.* She initially had

3

thoughts of suicide, but denied them in subsequent examinations. Tr. 144, 146, 148-52, 154, 156, 255-60, 262, 265, 269. Dr. Berger diagnosed major depression and general anxiety disorder. Tr. 144, 146, 148-49, 150-52, 156, 255-57, 259, 261, 263, 266, 269. He assessed a global assessment of functioning (GAF) score of sixty on most visits.[1] While treating the plaintiff, Dr. Berger prescribed various medications and eventually recommended insight-oriented psychotherapy with Helene Hughes, L.S.W. Tr. 155.

Beginning in July 2002, the plaintiff attended psychotherapy sessions with Ms. Hughes once or twice a month. Tr. 158, 166-73, 277, 279-84, 290-96, 298-300, 302-10. Ms. Hughes noted that the plaintiff's symptoms were affected by particular stressors in her family life, such as the illness and the eventual death of her mother, her daughter's marital problems, and her own marital problems. Tr. 166-73, 277, 279-80, 282-84, 290-95, 298-300, 302-08. Ms. Hughes assessed GAF

---

[1] The GAF scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by a clinician to indicate an overall judgment of a person's psychological, social, and occupational functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-R) 34 (4th ed. 2000). A GAF between 51 and 60 indicates moderate difficulty in social, occupation, or school functioning. *Id.*

scores ranging from forty-nine to fifty-seven.[2]  Tr. 280, 289, 295, 309.  In a Bureau of Disability Determination questionnaire, Ms. Hughes noted that the plaintiff had "very poor" concentration, "poor" recent memory and immediate recall, but "good" social judgment.  Tr. 159-160.  Ms. Hughes related the plaintiff's belief that she could not work because of her depression, anxiety and inability to concentrate.  Tr. 158, 163.

In May 2003, Ali A. Nourian, M.D., a psychiatrist, performed a consultative examination.  Tr. 219-23.  Dr. Nourian reported that the plaintiff was depressed and that she complained about being confused and forgetful.  Tr. 220.  He noted that she had very little motivation but fair concentration and adequate memory for both the remote and recent past.  Tr. 220.  Dr. Nourian reported that the plaintiff's impulse control was adequate and her social judgment was satisfactory.  *Id.*  Dr. Nourian diagnosed major depression, panic disorder, and general anxiety disorder.  *Id.*  He opined that the plaintiff had a fair

---

[2] GAF scores of forty-one to fifty indicate "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  DSM-IV at 32.

5

ability to perform most work-related mental activities.  Tr. 222-23.

At the May 2004 hearing, the plaintiff testified that she had difficulty concentrating, was sad all the time, and could not handle stress.  Tr. 325, 328-30.  She stated that she could drive short distances for simple errands, go to her doctor, do laundry, wash dishes, help her husband change bed sheets, and occasionally go to church.  Tr. 320, 336, 338-39.

After the ALJ issued an unfavorable decision in June 2004, the plaintiff submitted a letter, dated January 10, 2005, from Dr. Berger.  Tr. 8, 314.  Dr. Berger opined that the plaintiff was "permanently disabled," that any employment situation would create disabling stress, and that the range in the GAF scores that he and Ms. Hughes had assessed were a reflection of the plaintiff's instability.  Tr. 314.  The Appeals Council reviewed this additional evidence but concluded that it did not provide a basis for changing the ALJ's decision.  Tr. 5-6.

**III.   Disability Determination Process**

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled.  The ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the applicant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  20 C.F.R. § 404.1520.

Here, the ALJ determined that (1) the plaintiff had not engaged in substantial gainful activity since her alleged disability onset date; (2) the plaintiff's depression, anxiety, and obesity were severe; (3) but did not meet or medically equal any listed impairment(s); (4) that the plaintiff was unable to perform her past relevant work because of her non-exertional limitations; but (5) had the residual functional capacity (RFC) to perform simple, low-stress, unskilled medium work.  Tr. 23-24.  The VE gave examples of such jobs (i.e. janitor, packer, and assembler), and testified that they existed in significant

numbers in the national economy. Tr. 23.  20 C.F.R. § 404.1560. Because the plaintiff was able to perform work that existed in significant numbers in the national economy, the ALJ determined that the plaintiff was not disabled.  Tr. 23.  20 C.F.R. § 404.1520(g).

### IV.  Discussion

The plaintiff argues that the ALJ: (1) gave insufficient weight to the opinions of her treating psychiatrist and therapist; (2) erred in not giving great weight to her subjective complaints of pain; and (3) erred in evaluating her RFC without completing a psychiatric review technique form.

#### A.  Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d

358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

B.  Whether the ALJ gave insufficient weight to the opinions of the plaintiff's treating psychiatrist and treating therapist

The plaintiff argues that, although the opinion of her treating therapist, Ms. Hughes, was not entitled to controlling weight because she was not an "acceptable medical source" under 20 C.F.R. § 404.1513(a), her opinion deserved weight under 20 C.F.R. § 404.1513(d). The latter regulation states that the ALJ "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d)(emphasis added). This language is permissive, however. It does not require the ALJ to either use the evidence from Ms. Hughes or to assign it weight.

The ALJ found Ms. Hughes' opinion to be inconsistent with the other evidence of record, citing the difference between the GAF scores that Ms. Hughes and Dr. Berger had assessed, of forty-nine and sixty, respectively, within four days of each

9

other in September 2003.  Tr. 21, 258-59, 295.  The plaintiff argues that the ALJ erred in not further developing the record regarding the GAF score inconsistencies.  Doc. 5 at 8-9.  The ALJ's determination that Ms. Hughes and Dr. Berger's findings were inconsistent does not mean, however, that the record was incomplete.  Although Dr. Berger later explained the variations in GAF scores to be a reflection of the plaintiff's instability, Dr. Berger had consistently assigned GAF scores of sixty or in the high fifties during his entire course of treatment from August 2002 through March 2004.  Tr. 144, 146, 149-52, 154, 255-57, 259, 261, 263, 266, 269, 272, 275.  This constitutes substantial evidence supporting the ALJ's determination that Ms. Hughes' opinion was inconsistent with Dr. Berger's.  Tr. 21.

The plaintiff also contends that the ALJ ignored Dr. Berger's opinion that employment would create "disabling stress" that would "produce disabling and life threatening conditions."  Doc. 5 at 3.  However, this opinion was submitted not to the ALJ, but to the Appeals Council.  Tr. 5-6, 314.  The Appeals Council considered Dr. Berger's opinion, as expressed in his January 2005 letter, and determined that it would not have changed the ALJ's decision.  Tr. 5-6, 314.  There does not

appear to have been error in the Appeals Council's determination to decline to accord significant weight to this largely vocational opinion of the psychiatrist. The ALJ, having reviewed and considered Dr. Berger's medical records, did not conclude that the plaintiff was disabled. Tr. 17-18, 24.

Dr. Berger's previous progress notes, those considered by the ALJ, supported the ALJ's determination.³ Dr. Berger had not suggested that the plaintiff required hospitalization. Tr. 268-76. His notes reveal that instead he "discussed coping with depression" and "encourage[d] the plaintiff to "ventilate feelings." Tr. 261, 263, 266, 275. In addition, although the plaintiff initially admitted thoughts of suicide, she denied them in subsequent visits. Tr. 144, 146, 148-52, 154, 156, 255-60, 262, 265, 269. Finally, Dr. Berger consistently assessed GAF scores consistent with only moderate difficulties in social and occupational functioning. DSM-IV-R at 34. There is not a

---

³ We note that although Dr. Berger's January 10, 2005 letter was not submitted to the ALJ, the district courts of the Third Circuit have followed the practice of considering evidence submitted to the Appeals Council, but not to the ALJ, "as part of the record *as a whole* in deciding if the ALJ's decision, as the final decision of the Commissioner, is supported by substantial evidence." *Vasquez v. Apfel*, 1998 WL 966087, *5 (Sept. 30, 1998 E.D.P.A.).

basis to find error in the weight accorded by the Commissioner to psychiatric evidence.

C.  Whether the ALJ erred in not giving great weight to the plaintiff's subjective complaints

The plaintiff argues that the ALJ erred in not giving weight to her subjective symptoms.  Doc. No. 5 at 8.  She noted that an ALJ must give "serious consideration" to subjective complaints "even when [they] are not fully confirmed by objective medical evidence."  *Welch v. Heckler*, 808 F.2d. 264, 270 (3d. Cir. 1986).  The ALJ did give serious consideration to the plaintiff's statements as to her subjective symptoms, and incorporated this consideration into the residual functional capacity assessment.  Tr. 21.  The ALJ determined that the plaintiff had only a "fair ability" to perform many work-related functions, such as "follow work rules," "deal with work stresses," "behave in an emotionally stable manner," and "demonstrate reliability."  *Id.*  The ALJ concluded that, as a result, the plaintiff was limited to "simple low stress, unskilled work."  *Id.*  These vocationally germane expressions by

12

the ALJ of the effects of the plaintiff's subjective symptoms are based upon substantial evidence.

While the ALJ gave serous consideration to the plaintiff's subjective complaints, she did not give them great weight. Tr. 20. The ALJ determined that the medical evidence did not support symptoms consistent with the plaintiff's complaints. Tr. 20. The ALJ noted that the plaintiff's condition waxed and waned. Tr. 20, 258-76. Dr. Berger's progress notes support this finding. Dr. Berger described the plaintiff's anxiety and depression as "related to situational stressors." Tr. 259, 263, 269, 272, 275.

Under 42 U.S.C. § 423(d)(5)(A),

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or

13

>    his physician as to the intensity and persistence of
>    such pain or other symptoms which may reasonably be
>    accepted as consistent with the medical signs and
>    findings), would lead to a conclusion that the
>    individual is under a disability.  Objective medical
>    evidence of pain or other symptoms established by
>    medically acceptable clinical or laboratory techniques
>    (for example, deteriorating nerve or muscle tissue)
>    must be considered in reaching a conclusion as to
>    whether the individual is under a disability.  Any
>    non-Federal hospital, clinic, laboratory, or other
>    provider of medical services, or physician not in the
>    employ of the Federal Government, which supplies
>    medical evidence required and requested by the
>    Commissioner of Social Security under this paragraph
>    shall be entitled to payment from the Commissioner of
>    Social Security for the reasonable cost of providing
>    such evidence.

Our Court of Appeals has stated that when the medical evidence supports a claimant's complaints of pain, the administrative law judge may not discount them without contrary medical evidence.  *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *Chrupcola v. Heckler*, 829 F.2d 1269 (3d Cir. 1987).

The plaintiff's symptoms were not found by the ALJ to be inconsistent with medical signs and findings as established by Dr. Berger's reports.  The ALJ needed to decide what to do with the opinion evidence from Dr. Berger that related solely to vocational issues, and needed to determine a vocationally useful

14

set of statements of the vocational significance of the plaintiff's symptoms.  The ALJ did so, and we do not find the fact finding process and analysis of the ALJ to be inconsistent with the statute, the case decisions or substantial evidence in the record.

D.  <u>Whether the ALJ erred in evaluating the plaintiff's RFC without completing a psychiatric review technique form</u>

The plaintiff argues that the ALJ's assessment of her RFC was incomplete because the ALJ did not attach a psychiatric review technique form (PTRF) to the opinion.  20 C.F.R. § 404.1520a(e)(2) requires the ALJ to "incorporate the pertinent findings" in her written decision.  *Id.*

The ALJ has used the pertinent finding (Tr. 219-230) in her Decision. Tr. 18-20, 23-24, 355-356.  The ALJ discussed the plaintiff's abilities to (1) perform activities of daily living, (2) to function socially, (3) concentrate and persist at a consistent pace; and (4) the extent to which the plaintiff had any episodes of decompensation.  Tr. 19-20.  These are the four PTRF factors.  20 C.F.R. § 404.1520a(c)(3). The ALJ concluded that the plaintiff's impairments only moderately restricted her:

15

(1) activities of daily living, (2) ability to function socially, and (3) ability to concentrate.  *Id.*  The ALJ also noted that the plaintiff had no episodes of decompensation.  Tr. 20.  These conclusions are consistent with a finding that the plaintiff's impairments did not meet or medically equal the criteria of any of the relevant listings in 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00.  Tr. 19-20.  Because the ALJ discussed the pertinent PTRF findings and their import in her written decision, the ALJ satisfied the requirements of 20 C.F.R. § 404.1520a(e)(2).

**V.  Conclusion**

On the basis of the foregoing, it is recommended that the appeal of the plaintiff be denied.

> ***/s/ J. Andrew Smyser***
> J. Andrew Smyser
> Magistrate Judge

Dated:    February 3, 2006.