```
                    UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DIANA M. MURPHY,                     :
                                     :
          Plaintiff,                 :    Civil No. 05-1132
                                     :
     v.                              :
                                     :
JO ANNE B. BARNHART,                 :    JUDGE CONABOY
Commissioner of Social               :
Security,                            :    (Magistrate Judge Smyser)
                                     :
          Defendant.                 :
_____
```

## Memorandum and Order

Before the Court are Diana M. Murphy's ("Plaintiff") objections to Magistrate Judge Smyser's Report and Recommendation, (Doc. 10). In the Report and Recommendation, the Magistrate Judge recommends adopting the Administrative Law Judge's, ("ALJ"), finding that Plaintiff is not disabled. Furthermore, he recommends dismissing Plaintiff's objections to the ALJ's decision.

Based on the discussion below, the Magistrate Judge's Report and Recommendation is adopted.

I.   Background[1]

Plaintiff applied for disability insurance benefits (DIB) on February 28, 2003, alleging disability since June 11, 2002. Her application was denied and she filed a request for a hearing. On June 21, 2004, the administrative law judge (ALJ) issued a decision denying the Plaintiff's claim. Plaintiff requested review from the

---

[1] Unless indicated otherwise, the following facts are taken from the Magistrate Judge's Report and Recommendation, (Doc. 9).

Appeals Council, who denied her request on April 8, 2005. Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(g).

At the time of the ALJ's decision, Plaintiff was fifty-three years old. She has a high school education and past work experience as a cashier and as a disbursement processor for a financial services company. Plaintiff alleged disability since June 11, 2002, due to major depression, anxiety, panic attacks, chronic chest pain, high blood pressure, and self-mutilation.

Plaintiff was admitted to the hospital on June 11, 2002, with chest pain and palpitations. She was diagnosed with atypical chest pain with palpitations after a stress test, CAT scan, and laboratory findings revealed normal findings, except for elevated cholesterol.

Plaintiff saw her family physician, Philip A. Boccagno, M.D. from February 2002 through March 2003, for reflux, high blood pressure, and weight issues. After Plaintiff's June 2002 visit to the emergency room, Dr. Boccagno opined that Plaintiff had classic panic attacks related to work stress. He prescribed Paxil for long-term stress. In July 2002, Plaintiff did not have panic symptoms, chest pain or suicidal feelings. However, she thought the Paxil was causing memory problems and that it did not agree with her. Dr. Boccagno recommended psychiatry. In December 2002, Dr. Boccagno noted that Plaintiff's panic was "still out of

control."  He suggested weight loss for her reflux and a diuretic for her blood pressure and told Plaintiff to return in six weeks.

In August 2002, Matthew Berger, M.D., a psychiatrist, began treating Plaintiff for depression and anxiety.  Throughout 2003, Dr. Berger conducted monthly mental status examinations, during which Plaintiff reported that she was depressed and anxious, often in relation to family problems.  He noted that Plaintiff's insight, judgment, orientation, and contact with reality were appropriate and intact.  Initially, Plaintiff had thoughts of suicide but she denied them in subsequent examinations.  Dr. Berger diagnosed major depression and general anxiety disorder.  He assessed a global assessment of functioning ("GAF") score of sixty on most visits.[2] While treating Plaintiff, Dr. Berger prescribed various medications and eventually recommended insight oriented psychotherapy with Helen Hughes, L.S.W.

Beginning in July 2002, Plaintiff attended psychotherapy sessions with Ms. Hughes once or twice a month.  Ms. Hughes noted that Plaintiff's symptoms were affected by particular stressors in her family life, such as the illness and eventual death of her mother, her daughter's marital problems and her own marital

---

[2] The GAF scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by a clinician to indicate an overall judgment of a person's psychological, social, and occupational functioning.  See *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-R) 34 (4th ed. 2000).  A GAF between 51 and 60 indicates moderate difficulty in social, occupation, or school functioning.  Id.

problems. Ms. Hughes assessed GAF scores ranging from forty-nine to fifty-seven.[3] In a Bureau of Disability determination questionnaire, Ms. Hughes noted that Plaintiff had "very poor" concentration, "poor" recent memory and immediate recall, but "good" social judgment.

In May 2003, Ali A. Nourian, M.D., a psychiatrist, performed a consultative examination. Dr. Nourian reported that Plaintiff was depressed and that she complained about being confused and forgetful. He noted that she had very little motivation but fair concentration and adequate memory for both the remote and recent past. Dr. Nourian reported that Plaintiff's impulse control was adequate and her social judgment was satisfactory. Dr. Nourian diagnosed major depression, panic disorder, and general anxiety disorder. He opined that Plaintiff had a fair ability to perform most work-related mental activities.

At the May 2004 hearing, Plaintiff testified that she had difficulty concentrating, was sad all the time, and could not handle stress. She stated that she could drive short distances for simple errands, go to her doctor, do laundry, wash dishes, help her husband change bed sheets and occasionally go to church.

After the ALJ issued an unfavorable decision in June 2004,

---

[3] GAF scores of 41-50 indicate "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifing) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." DSM-IV at 32.

Plaintiff submitted a letter, dated January 10, 2005, from Dr. Berger.  Dr. Berger opined that Plaintiff was "permanently disabled," that any employment situation would create disabling stress, and that the range in the GAF scores that he and Ms. Hughes had assessed were a reflection of Plaintiff's instability.

II.  Discussion

A.  Standard of Review

The standard for judicial review in this case is governed by the Social Security Act.  A claimant who is unsuccessful in the administrative process may seek judicial review once there is a final decision by the Commissioner of Social Security.  See 42 U.S.C. 405(g); see *Matthews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  If the Appeals Council denies a claimant's request for review, the ALJ's decision is the Commissioner's final decision.  See *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000).  The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir.2001).  Therefore, the question before this Court is whether the ALJ's decision was supported by substantial evidence.

B.  Plaintiff's Objections to the Report and Recommendation

In her objections to the Magistrate Judge's Report and Recommendation, Plaintiff claims that the ALJ failed to give

5

controlling weight to the opinions of her treating physician and therapist.  (Doc. 11 at 2).  Furthermore, Plaintiff claims that the Magistrate Judge failed to give proper consideration to the "clarifying letter" sent by Dr. Berger and failed to properly consider the effect the letter would have had on the ALJ's decision.  (Id. at 3).  Lastly, Plaintiff claims that the Magistrate Judge wrongly "brushed aside" the ALJ's failure to attach a psychiatric review technique form to her findings.  (Id. at 5).

   Primarily, Plaintiff's objections focus on the weight given to Dr. Berger's "clarifying letter," which was sent to the Appeals Council.  Plaintiff claims that the letter to the Appeals Council "was meant to rebut the interpretations given to the evaluation of Ms. Hughes as well as to support the findings of disability."  (Id. at 3).  Furthermore, Plaintiff submits that the letter "goes directly to one of the ALJ's conclusions, that being that the claimant's GAF (49) before Ms. Hughes was in conflict with claimant's actual (higher) GAF a short time later."  (Id.).  The clarifying letter suggests that the GAF differentials were the result of Plaintiff's instability and were therefore not inconsistent with Dr. Berger's findings.  Accordingly, Plaintiff suggests that the letter "undermines the rationale of the ALJ for rejecting the therapist's opinions."  (Id.).

   In response to Plaintiff's objections, Defendant highlights

the fact that "disability" is a legal, not a medical determination. A finding by a medical source that a claimant is "disabled" or "unable to work" is not determinative of the claimant's disability status. 20 C.F.R.§ 404.1527(e)(1) (2005). Furthermore, because Ms. Hughes was not an "acceptable medical source," her opinion was not entitled to controlling weight as a treating source opinion under 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 404.1513 (a)(2005) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).

Defendant argues that notwithstanding the fact that Ms. Hughes was not an acceptable medical source, the ALJ took her findings into consideration. (Doc. 12 at 3). The ALJ cited the inconsistencies between the GAF scores assigned by Ms. Hughes and Dr. Berger, with Ms. Hughes reporting a GAF score of 49 and Dr. Berger and his associate reporting GAF scores of high 50's to 60. Defendant submits that it was only upon considering all of the evidence of record that the ALJ found the difference in the GAF scores significant. (Doc. 12 at 3). Therefore, Defendant submits that the ALJ's decision was supported by substantial evidence and should be affirmed. See *Hartranft v. Apfel*, 181 F.3d 358. 360 (3d Cir. 1999).

While we agree with Defendant that the ALJ's decision was based on substantial evidence, we must briefly address the issue of

7

"new evidence" and what role, if any, the "clarifying letter" sent by Dr. Berger should play in Plaintiff's appeal process.  A review of the relevant case law leads us to the conclusion that the letter submitted by Dr. Berger to the Appeals Council does not meet the criteria necessary for Plaintiff's claim to be remanded to the Commissioner.  In *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001), the Third Circuit summarized the options available to the District Court when the Appeals Council has denied review and the claimant presents evidence that was not before the ALJ.   In *Matthews*, the Circuit Court found that a claimant may proffer evidence in the district court that was not previously presented to the ALJ, and the district court may remand to the ALJ, if there is new evidence *which is material* and that there was *good cause* for the failure to incorporate such evidence into the record in the prior ALJ proceeding.  (Id. at 593; emphasis added).

In the instant case, Plaintiff states that Dr. Berger's "clarifying letter" was sent "to rebut the interpretations given to the evaluation of Ms. Hughes." (Doc. 11 at 3).  It seems clear to this Court that Dr. Berger's letter does not fall in to the category of "new evidence" contemplated by the Circuit Court in *Matthews*.  In fact, Plaintiff does not appear to argue that the letter is new evidence, but rather, submits that the letter rebuts the reasoning the ALJ used in reaching her conclusion that Plaintiff is not disabled.  The submission of such evidence does

8

not require a District Court to remand a claim to the Commissioner.

Because the ALJ's findings were supported by substantial evidence, and because the "clarifying letter" letter submitted by Plaintiff does not qualify as "new evidence" so that the claim may be remanded to the Commissioner, we agree with the Magistrate Judge that Plaintiff's claim should be denied.  Therefore, the Report and Recommendation is adopted.


Date: June 21, 2006           S/Richard P. Conaboy

                              Richard P. Conaboy
                              United States District Judge

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANA M. MURPHY, | : | |
| Plaintiff, | : | Civil No. 05-1132 |
| v. | : | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | : | JUDGE CONABOY |
| | : | (Magistrate Judge Smyser) |
| Defendant. | : | |

Order

Now, this 21st day of June, the following order is entered:

1. The Magistrate Judge's Report and Recommendation, (Doc. 9), is adopted; and

2. Plaintiff's appeal of the Commissioner's decision denying Plaintiff disability insurance benefits, (Doc. 1), is denied; and

3. The clerk of court is directed to close this case.

S/Richard P. Conaboy
Richard P. Conaboy
United States District Judge